UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Kenneth T. Shearer and Barbara Shearer, | Hon. Joseph H. Rodriguez |
| Plaintiffs, | Civil No. 13-5887 |
| v. | |
| A.W. Chesterton Company, et. al., | Opinion |
| Defendants. | |

Presently before the Court are three separate motions for Summary Judgment filed by Defendants by A.W. Chesterton Company [30], General Electric ("GE") [31], and Westinghouse [33]. Plaintiffs Kenneth T. Shearer and Barbara Shearer filed opposition to GE's motion. There is no opposition as to A.W. Chesterton Company's motion and, by way of letter, Plaintiffs do not oppose Westinghouse's motion. See Letter dated Dec. 4, 2014, Dkt. No. 38. On May 20, 2015, the Court heard oral argument on the motions. For the reasons stated on the record that day and, those that follow, all three motions for summary judgment are granted.

## Background

Plaintiffs Kenneth T. Shearer ("Shearer") and Barbara Shearer allege that Shearer contracted mesothelioma while serving in the United States Navy.[1] Plaintiffs have sued a number of entities alleging various theories of liability. Relevant here, Plaintiffs allege GE is liable for failing to warn Shearer of the dangers associated with the asbestos

---

[1] At the time the Complaint was filed, both Kenneth and Barbara Shearer were listed as Plaintiffs. In March 2014, Kenneth passed away. The caption of the case should, but does not, reflect a change in styling.

insulation that, while not manufactured or distributed by GE, GE knew would be used in connection with its equipment. GE manufactured and distributed turbines to the United States Navy pursuant to specifications determined by the Navy. The parties agree that the Navy's specifications required GE to design the turbine in a manner that accommodated asbestos insulation and that the asbestos insulation was placed on the GE turbines after the turbines left GE's control. The issue is whether, under these circumstances, GE owed a duty to Shearer to warn him about the dangers of the asbestos insulation, which is a product GE neither manufactured nor distributed.

Shearer served in the United States Navy from June 20, 1960 through May 22, 1963 aboard the U.S.S. Ernest G. Small. See Plaintiff's Military Personnel Records, Ex. C, Def. Mat. Facts. When he first boarded the vessel, it was dry docked at Hunter's Point, San Francisco, California. Shearer Dep., 66:10. According to an unofficial USS Ernest G. Small webpage, her keel was laid down by the Bath Iron Works, Bath ME on January 30, 1945, she was launched on June 14, 1945 and commissioned August 21, 1945. See http://www.navsource.org/archives/05/838.htm.

The USS Ernest G. Small was the only naval ship on which Mr. Shearer served and his work detail assignment was in the aft engine room of the vessel. Id. 72:3-23. At the time Shearer boarded the vessel, it was three quarters of the way through a major overhaul; Shearer's assignment was to stand watch in the aft engine room. Id. at 68:9 to 69:9. According to Shearer, the overhaul was referred to as FRAM: Fleet Rehabilitation and Modernization. Id. 108:1 to 8 and 69:1-6. Naval personnel handled all aspects of the FRAM. Id. Shearer testified that during the FRAM, he observed the personnel wrapping the steam lines and turbines in the aft engine room on the vessel with asbestos padding. Id. at 160:25 to 161:9 and 163:8-10. Shearer was unable to identify the

manufacturer of the insulation and he was unaware of the stage of the project at the time he boarded the ship.  Id. at 164:5-13.

Shearer's duties aboard the vessel included working the throttle board, maintaining auxiliary pumps, making temperature checks, making sure the pumps and air purifiers were running, changing filters and plates on oil purifiers and checking water levels and temperatures.  Id. at 69:10-23.  In addition, he performed hands on work, such as sweeping up "asbestos lagging" and debris from insulation on "everything" including the turbines, pumps, pump turbines and water lines.  Id. at 103:24 to 104:25.  He also changed packing glands on several auxiliary pumps and bilge pumps that were covered with asbestos insulation.  Id. at 81:7 to 85:6.

The aft engine room housed a number of turbines, both large and small.  Shearer could not identify the manufacturer of the turbines, or the company responsible for maintaining the turbines.  Id. at 160:18-24; 203:8-13.  Likewise, Shearer could not identify the manufacturer of the insulation wrap for the turbines.  Id. at 209:5-22.

Mr. Shearer died on March 14, 2014 from complications of mesothelioma.  The Complaint alleges, *inter alia*, that GE's failure to warn about the health hazards posed by the asbestos laden equipment aboard the USS Ernest G. Small caused Shearer's illness, and, now, wrongfully caused his death. GE moves for Summary Judgment.[2]

---

[2] Plaintiffs failed to respond to the summary judgment motion filed by A.W. Chesterton [30].  By way of letter dated Dec. 4, 2014, Plaintiffs do not oppose Westinghouse's summary judgment motion [33]. See Dkt. No. 38.  As such, the Court will grant summary judgment as unopposed in favor of A.W. Chesterton [30] and Westinghouse [33].

## **Summary Judgment Standard**

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F.

Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Andersen</u>, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## Analysis

GE argues it is entitled to summary judgment on three grounds.  First, that it is entitled to governmental contractor immunity pursuant to <u>United States v. Boyle</u>, 487 U.S. 500 (1988). Second, and in the alternative, that because maritime law governs the claims in this case GE is not liable for component parts that it did not manufacture or distribute, thus invoking the "bare metal" defense pursuant to <u>Lindstrom v. A-C Product Liability Trust</u>, 424 F.3d 488, 494-95 (6th Cir. 2005).  GE contends that there is no evidence in the record to suggest that GE furnished any asbestos containing component parts, either as original equipment or as replacement parts for use aboard the USS Ernest G. Small.  Third, and again in the alternative, GE argues that under New Jersey law, GE cannot be liable for products it did not manufacture or distribute.

Plaintiff files a robust opposition challenging the elements necessary to establish causation in an asbestos failure to warn case. Plaintiff argues that application of New Jersey law mandates that Plaintiffs' claims be considered under a risk utility analysis that focuses on whether a manufacturer is liable for failing to warn about the dangers of asbestos component parts made by other manufacturers but used in connection with its equipment.  In other words, even if GE supplied, manufactured, and distributed a turbine that contained no asbestos, Plaintiff argues that under New Jersey law GE is liable for failing to warn about the dangers posed by asbestos insulation, because it knew that asbestos insulation would be used to insulate its turbine.  The New Jersey Supreme Court has yet to address this issue.

Plaintiff formulates a well-reasoned prediction of how the New Jersey Supreme Court would resolve the issue. Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 244 (3d Cir. 2010). However, Plaintiff's argument misses the mark.  Under New Jersey law, "to prevail against a particular defendant in an asbestos case, a plaintiff must establish, in addition to other elements of a product liability action, exposure to friable asbestos manufactured or distributed by the defendant." Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 30 (App. Div. 1989); see also Goss v. Am. Cyanamid, Co., 278 N.J. Super. 227, 236 (App. Div. 1994) (noting that in asbestos exposure tort claim, plaintiff must demonstrate exposure to a defendant's asbestos containing product).  Recently, the New Jersey Appellate Division held in an asbestos failure to warn claim that liability may attach only where a plaintiff identifies an asbestos-containing product manufactured or supplied by defendant.  Hughes v. A.W. Chesterton Co., 435 N.J.Super. 326, 345 (App. Div. 2014).  Other courts in this district have followed suit.  See Barnes v.

6

Foster Wheeler Corp., No. 1: CV 13–1285, 2014 WL 2965699, at *3 (D.N.J. June 30, 2014) (collecting and discussing cases); Thomasson v. Air & Liquid Systems Corp., No. 1: CV 13-1034, 2015 WL 1639730 (D.N.J. April 9, 2015).

Even if Plaintiff is correct, the Court need not delve into the murky waters of prognostication because, for the reasons that follow, the claims are properly considered under maritime law.

### A. Choice of Law

The question whether maritime law[3] or New Jersey law governs the Plaintiff's claims is governed by federal law. See U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1); see also Conner v. Alfa Laval, Inc., 799 F.Supp.2d 455 (E.D.Pa. 2011). Application of maritime jurisdiction has evolved over time. The modern standard in an asbestos case considers both the location of the exposure and whether the exposure "had a potentially disruptive impact on maritime commerce." Conner, 799 F.Supp.2d 467 (citing Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).

The district court in Conner, sitting in a consolidated multidistrict litigation, recounted the historical expansion of the relevant considerations that determine the existence of admiralty jurisdiction. Conner, 799 F.Supp.2d 461. The court noted the tension between admiralty jurisdiction and state law; application of the former displaces state law in a manner similar to preemption. Id. at 461, n.7. However, maritime law is favored, even though state law may accommodate a plaintiff's claim, because admiralty

---

[3] Maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules" created by the judiciary. East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864–65, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

7

law ensures uniform protection of the federal interest in maritime commerce. Id. In a products liability case, maritime law applies where the circumstances of a plaintiff's exposure to the offending product satisfies both a locality test and a connection test. Id. at 463–66.

The locality test is satisfied when the tort occurs on navigable waters. Id. Here, the locality test is satisfied because the exposure occurred on navigable waters. Id. Although the USS Small was dry-docked at the time of Shearer's service, work performed aboard a dry docked ship is considered sea-based work performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); see also Conner, 799 F.Supp.2d at 499. Recently, a district court in this Circuit held that work performed aboard a dry-docked ship satisfies the locality test. See Conner, 799 F.Supp.2d at 499; Deuber v. Asbestos Corp., No. 10–78931, 2011 WL 6415339, at *1 n. 1 (E.D.Pa. Dec. 2, 2011) (applying maritime law to ship in "dry dock" for overhaul).

Satisfaction of the connection test requires a more nuanced interpretation of the incident. Id. There are two components to the connection test. First, a court "must 'assess the general features of the type of incident involved,' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.' Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Id. (internal citations omitted) (quoting Sisson, 497 U.S. at 363, 364 n. 2, 365, 110 S.Ct. 2892). Under this test, the conduct of the actor is relevant and the conduct must relate to maritime activity.

8

Shearer's work satisfies the connection test, which requires that the incident could have " 'a potentially disruptive impact on maritime commerce,' " and that " 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.' " Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 115 S.Ct. 1043 (1995) (citing Sisson, 497 U.S. at 364, 365, and n. 2, 110 S.Ct. 2892)). Here, Shearer's work as a watchman caused his exposure to the asbestos during the FRAM. The maintenance of pumps for use aboard a marine vessels is an essential function of the proper operation of the vessel. The repair of a marine vessel is maritime activity. See John Baizley Iron Works v. Span, 281 U.S. 222, 232, 50 S.Ct. 306, 74 L.Ed. 819 (1930); Messel v. Foundation Co., 274 U.S. 427, 432, 47 S.Ct. 695, 71 L.Ed. 1135 (1927); Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372 (1925); Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U.S. 479, 480–81, 43 S.Ct. 418, 67 L.Ed. 756 (1923). Given that the FRAM occurred during dry-dock, Shearer's exposure occurred during sea-based work and satisfies the connection test. See Conner, 799 F.Supp.2d 455; Deuber, 2011 WL 6415339, at *1 n. 1. As a result, maritime law governs the claims at bar. See Conner, 799 F.Supp.2d at 462–63.[4]

---

[4] During oral argument, Plaintiff conceded application of maritime law but argued that such application does not change the outcome. Under maritime law, the Court considers the "prevailing view" on land and draws from the law of the state in which it sits. See, e.g., Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1134 (9th Cir. 1977). As a result, Plaintiff's argument that New Jersey law governs is academic, as Plaintiff contends application of maritime law presupposes application of New Jersey law.

B.  The Bare Metal Defense

The Sixth Circuit in Lindstrom set forth a test for causation in an asbestos claim under maritime law. Lindstrom, 424 F.3d at 492. First, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." Id. (citing Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001)). "[M]inimal exposure" to a defendant's product is insufficient to establish causation. Lindstrom, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id.

An additional element was identified by the district court in Conner, 842 F.Supp.2d 791. The Conner court held that a third element (implicit in the test set forth in Lindstrom and Stark) required a plaintiff to show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. Conner, 842 F.Supp.2d at 801; see also Hays v. A.W. Chesterton, Inc., No. 2:09-93728, 2012 WL 3096621 (E.D.Pa. May 1, 2012) (citing Abbay v. Armstrong Int'l., Inc., No. 10–83248, 2012 WL 975837, at *1 n. 1 (E.D.Pa. Feb. 29, 2012) (Robreno, J.)). Conner, which examines and recognizes application of the "bare metal" defense under maritime law, has been cited as persuasive through this Circuit.  Although not binding, this Court adopts the sound reasoning set forth in that opinion and its progeny. See Barnes v. Foster Wheeler Corp., 2014 WL 2965699; Dalton v. 3M Co., 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases).

The "bare metal defense" is a challenge to a plaintiff's burden to prove that a defendant owed plaintiff a duty to warn about the dangers of asbestos.  In this regard,

10

maritime law departs from the traditional foreseeability standard that Plaintiff argues applies under New Jersey law.  Recently, the same court that considered the MDL cases consolidated in Conner held that Pennsylvania law does not recognize the bare metal defense. See Schwartz v. Abex Corp., -- F.3d --, 2015 WL 3387824 (E.D.P.A. May 27, 2015).  In so ruling, the district court explained the bare metal defense. Id.  Like GE, manufacturers of various products, including turbines, designed for use with asbestos-containing component parts, such as external insulation, raise the bare metal defense as a bar to both duty to warn and causation.  "Defendants often move for summary judgment on the ground that they are not liable for injuries caused by asbestos products or component parts (such as insulation, gaskets, and packing) that were used in connection with their product, but which they did not manufacture or supply. In other words, Defendants assert the so-called "bare metal defense." Id. at *1. In short, if a product leaves a facility as bare metal, without any asbestos parts, a manufacturer may assert the bare metal defense as a bar to liability.  Under the bare metal defense, manufacturers owe no duty to warn of the hazards of asbestos products that the manufacturer did not manufacture or distribute. Conner, 842 F.Supp.2d 791; see also Schwartz, -- F.3d --, 2015 WL 3387824.

      Here, Plaintiff brings both negligence and strict product liability claims against Defendants. Plaintiff seeks a ruling that under New Jersey law GE is liable for failing to warn of the hazards of asbestos in the insulation manufactured and supplied by an entity other than GE, but used with GE's turbines after GE had placed its bare metal turbine into the stream of commerce.   The New Jersey Supreme Court has not ruled as to the applicability of the bare metal defense under New Jersey law.  Rather, Plaintiff argues under the holdings in Brown v. United States Stove Company, 98 N.J. 155 (1984),

Seeley v. Cincinnati Shaper Company, Ltd., 256 N.J.Super. 1 (N.J. App. Div. 1992), and Molino v. B.F. Goodrich Company, 261 N.J.Super. 1 (N.J. App. Div. 1992) that New Jersey would reject the bare metal defense in favor of a risk utility analysis which incorporates a foreseeability standard. In so doing, Plaintiff rejects the New Jersey Appellate Division's recent holding in Hughes, 435 N.J. Super. 326, which upheld a grant of summary judgment where a plaintiff failed "to produce evidence they had any contact with friable asbestos in replacement parts that were manufactured or sold by Goulds[.]" Hughes, 435 N.J. Super. 326 (citing Sholtis, 238 N.J.Super. at 28–29).

Plaintiff's argument under New Jersey law raises the question of how the New Jersey Supreme Court would rule on the present matter and ostensibly seeks a ruling similar to that in Schwartz, -- F.3d --, 2015 WL 3387824. As previously discussed, this Court need not answer that question because Plaintiff's claims are governed by maritime law.[5] The Court is persuaded by the thorough and thoughtful analysis set forth in Conner and finds that, under maritime law, GE is entitled to summary judgment pursuant to the "bare metal" defense. There is no evidence in the record to suggest that

---

[5] As discussed supra., in New Jersey, "[i]t is, nevertheless, well-established that a plaintiff must demonstrate some level of exposure to a defendant's asbestos containing product." Barnes v. Foster Wheeler Corp., No. 1: CV 13–1285, 2014 WL 2965699, at *3 (citing Hughes, 435 N.J.Super. at 345); see also Sholtis, 238 N.J.Super. at 30; Goss, 278 N.J.Super. at 236.). As a result, the Courts ruling is consistent with a number of courts across the country, including New Jersey which have uniformly held that a naval manufacturer is not "liable for damages caused by asbestos-containing replacement parts (such as gaskets, packing, or insulation) that it neither manufactured nor placed in the stream of commerce. Almost uniformly, the courts have held that the manufacturer has no such liability." May v. Air & Liquid Systems Corp., 219 Md. App. 424 (Md. App. 2014) (citing cases). Pursuant to Conner, 842 F.Supp.2d at 802, Plaintiff's argument that Shearer was exposed to original asbestos is unpersuasive. Under maritime law, GE did not owe a duty to warn of the hazards posed by products it did not manufacture or distribute.

GE manufactured or distributed any asbestos containing products that allegedly caused Shearer's illness.  Plaintiff agrees that there is no evidence linking GE to the production or distribution of any material containing asbestos.  For these reasons, summary judgment is granted.  See Conner, 842 F.Supp.2d 802.

As a result, summary judgment is granted in favor of GE, A.W. Chesterton, and Westinghouse.[6]  An appropriate Order shall issue.


Dated: June 24, 2015

                                              s/ Joseph H. Rodriguez
                                              Hon. Joseph H. Rodriguez,
                                              UNITED STATES DISTRICT JUDGE

---

[6] In so ruling, the Court need not reach the issue of whether GE is entitled to governmental contractor immunity.